May it please the Court, my name is David Jordan. I represent the Plaintiff Appellant O.L. Private Counsel LLC, which for simplicity's sake I will refer to today simply as O.L.P.C. We seek reversal of the District Court's order denying O.L.P.C.'s motion for partial summary judgment and granting Ephraim Olson's cross motion for summary judgment. And we do so on principle grounds. First, the District Court erred in holding that O.L.P.C.'s damage theory was not legally cognizable. O.L.P.C. contends on this appeal that it is entitled to consequential damages for its business losses incurred to indemnify its clients for their expenses incurred in defending third party lawsuits based on documents stolen by Ephraim Olson from his former law firm O.L.P.C. And a bit of history may be helpful there. O.L.P.C. is a Utah based law firm that engages in corporate and tax advice particularly related to transnational transactions. Ephraim Olson is a Harvard educated lawyer who was employed by O.L.P.C. from 2014 to 2019. In 2020, he reached out to another former employee and asked him if he could get access to any of the trusts, the international trusts that O.L.P.C. as a law firm represented. In some way, that other employee, that other former employee was able to do so and Ephraim Olson persuaded him to send him those trusts and he did. And then not long thereafter, those trusts showed up as supporting documents for litigation that was filed both in Canada and Utah seeking to break the trusts. Our second grounds for seeking reversal is that the district court erred in dismissing O.L.P.C.'s conversion and aiding and abetting conversion claims. Counsel, I'm sorry to do this to you, but can we go back to your first grounds? Yes. On the business loss, probably a couple of questions, but what was the loss to O.L.P.C. from the taking of these documents from a former employee that wasn't even an O.L.P.C. employee as I understand it? So Ephraim Olson was a former O.L.P.C. I understand that, but the person who sent him those trust documents was not. That man's name was Tim Akrapanich and he was a former employee of a contractually affiliated business partner of O.L.P.C. They shared the same I.T. system and servers. Okay, so at that point though, if the documents are taken from the shared service from this other employee, if O.L.P.C. was then suing and saying, our business loss is reputational damage or it's measured in this dollar figure or something like that, it may be easier for anyone to understand that what you're talking about may be consequential damages. But as the lawsuit progresses, of course, once you present your damages to the defendant, then all that is presented are invoices for legal fees. And of course, that's the heart of the dispute here, whether or not that's consequential damages. So I'm just trying to have a hard time understanding what the business loss was. Well, let me explain. It would not be a novel concept that if you are a client of a law firm and you entrust your confidential documents to that law firm, and the law firm has an employee that steals your documents and then provides them to others who then sue the law firm's clients, that the clients who have lost their documents that have been entrusted to the law firm looks to the law firm to indemnify them for their expenses in defending the third party lawsuits against them. So if that's, as you just described, not an extraordinary circumstance, what maybe makes this case different, of course, is the indemnity agreement that arises is done orally. And as I understand it, it's essentially, as the district court said, Thomas Olson agreeing to indemnify himself because he owns the law firm. So how do we sort of wrap our head around those facts and how they relate to this sort of construct you just built? Well, I think it's important to recognize that the district court made no findings that there were undisputed facts about whether oral agreements were enforceable or not enforceable. The district court made no findings about undisputed facts concerning whether Thomas Olson was an insider or in some way an alter ego of the law firm without having determined whether those were undisputed facts. Comments about that by the district court are purely gratuitous in this context. The reality is the trusts, which are the clients, have been hailed into court in Canada and they have had to pay expenses and they are now looking to their law firm that lost their documents to this theft. But they were hauled into court before the documents were taken, right? No, no. So it was only because that former employee transferred these trust documents that litigation ensued? Yes. The documents were taken in June of 2020 and the first lawsuit in Canada was a so-called Meriva injunction suit seeking to freeze all the assets of those trusts. And that suit was filed in November of 2020, about three or four months later. Now, I will be the first to acknowledge that the third-party litigation doctrine in Utah is not crystal clear. But the general proposition is that it is not against the general American rule of of forbidding the recovery of attorney's fees if you are hailed into court in some third-party proceeding that is caused by someone else's tort. That is the general rule. And I think the district court went astray here when it looked at the Macris case, which we've cited, and said, well, we're going to define the third-party litigation rule by the facts of the Macris case. And that's the wrong thing to do because the third-party litigation rule is just a variant of the consequential damage rule that we're all familiar with. And the essential elements of it are foreseeability and causation. Was it foreseeable that the tort of stealing these documents and providing them to others that would use them in litigation might result in the law firm having to indemnify its clients for having lost their confidential documents? Well, there's an element of foreseeability in there, and there's an element of causation in there. But those are not issues which the district court addressed, and probably properly so because, by their nature, foreseeability and causation are fact-intensive issues which are typically reserved for the jury. So how does the causation element work here? How did the taking of those documents cause damages when the law firm then subsequently agrees to indemnify when it didn't have an obligation to do so? Well, I think it did have an obligation to indemnify. Where was the source of that obligation? I think the obligation derives from its fiduciary duty to its clients. It doesn't have to wait to get sued by its clients. Was that presented to the district court? None of that was presented to the district court because the district court didn't even address the causation issue. It just got hung up on the application of the third-party litigation rule and never addressed causation and never addressed foreseeability. If I can turn to the conversion claim, because I really think that is the most straightforward and simple one here. The district court, in a single sentence, dismissed those claims with these words, OLPC has not shown that it can obtain any remedy for its conversion claim, precluding summary judgment in its favor. As such, OLPC's motion for summary judgment must be denied. Now, damages are not an element of conversion under Utah law, and I think under the law of most other, if not all other states as well. Conversion is an invasion of a property right, and the tort is complete when the property of another is taken. The district court, for whatever reason, thought that in some way, OLPC had to show damages in order to have a conversion claim, and that is simply wrong. If I can quote from the B.C. Tech v. Ensel Intern Court case, it's a district of Utah case, 2008. Quotes, the establishment of damages is not an essential element to a conversion claim. Thus, plaintiff need not establish damages in order to prevail on its conversion claim. Close quotes. That's black letter law, properly recognized by the United States District Court in Utah. We've cited several other cases to the court as well that make clear that damages are not an element of conversion. And then finally, let me just turn to the subject of injunctive relief. Well, before you do that, so can you help me understand where the conversion claim was actually preserved in the court world? Yes. Well, that is a complicated issue, and I appreciate the question, Judge Gide. First of all, it was really not argued by any party. And because we filed a motion for partial summary judgment and said we're reserving the issue of damages for all claims for another day. The other side mentioned conversion, I think in a single sentence or two at the conclusion of an argument in which they just said you have to be able to show damages to prove your claim. They were wrong about that. The case that they cited does not stand for that proposition. But we never undertook in our motion to even argue it because it was for partial summary judgment and we reserved it. But it's plain error in any case. And this court's law is clear that if you make a ruling that is contrary to established settled law, and that's what happened here, then it's plain error and this court has the authority to fix it. I'll just say a quick word about injunctions and then reserve the rest of my time. On the subject of injunctions, the case law is clear that even if you can compensate some of your damages with some monetary award, that does not preclude injunctive relief. And that is particularly true when the claim is one for an invasion of a property right. If someone converts your property and they take it, you have the right to exclude them from taking it. And you can exclude them from keeping it by injunctive relief. And that is so crystal clear in the case law because all you have to show is that there is a risk of further or future harm. And the court made an assumption that it was not justified in making, which was that, well, the cow's out of the barn. But if the court had dug into it, if we'd actually talked about an injunction, rather than having the court grant the motions even without any oral argument, dispositive motions, the court would have learned that documents were taken which weren't used yet in any of the proceedings, but which may be, or the ones that have been taken and shown up in part in other cases, may appear somewhere else in some other context. And an injunction requiring the destruction of physical copies or the return of electronic copies is completely appropriate in the circumstances where someone has converted this kind of property. Thank you.  May it please the court. Caroline Olson on behalf of Ephraim Olson. I just want to take a second to situate these claims. This is one of several lawsuits spawned by a divorce between Thomas and Caroline Olson based on concerns that Thomas was using his expertise as an asset protection attorney to hide marital assets. Now, I'm going to start with damages because we think the district court got that exactly right. OLPC is attempting to recover attorney's fees incurred by a third party that OLPC gratuitously volunteered to pay when there's no claim that the third party itself can recover these fees. That is a radical theory of damages that would subvert the traditional American rule on the restriction of attorney's fees as damages. And not just that, but basic principles on the restrictions on the consequential damages. Judge Federico, this is exactly your colloquy with my friend when you asked, well, what was the harm to OLPC? And the answer is there was not. They are trying to couple a liability theory with a potential harm that is probably not even legally cognizable because there's no claim that the so-called, that the trust here could recover their own fees and trying to use a voluntary contract that it engaged in to manufacture harm and damages. And that certainly undercuts the traditional American rule that treats attorney's fees as special and not recoverable. In their theory, I think you could, it's unclear why you can't just, two parties just can't contract on the side to make, to convert whether otherwise non-recoverable attorney's fees and litigation costs were coverable in any case. And that would just subvert the American rule, which is why the Macri case consistently talks about the importance of keeping this rule narrow. And I think the third part, the present party restriction that's built into Macri is just an example of the broader principle of consequential damages, which is that you cannot recover for the harm suffered by another party. Now, I know my friend has an argument that these are just business expenses, but I would say that just fails the duck test. If it looks waddles and quacks like a duck, it's probably a duck. And we know that all of the evidence here is that to substantiate the claim for damages are attorney's fees. Those are classic attorney's fees. And they have not given us any case that suggested that simply by entering into an indemnification agreement, this converted those damages into anything else. A moment ago, counsel said that the OLPC had a fiduciary duty to indemnify the clients, the trusts here. Was that presented below or here on appeal? It was not, Your Honor. That is the first time that they have even offered any theory by which they think that they would be obligated to pay these fees or somehow that the trusts would have had some kind of claim against them that would have obligated to pay these fees. And in fact, if you look at their briefing, and I would direct you to page to volume 9, section 2159, what they said below was that this was the right thing to do. When you say that, you say it's the right thing to do when you're not obligated to do something, but that you think that you do it anyway. That is a gratuitous and voluntary offer. That is not an obligation. And I would also just point this court to volume 2, pages 436 to 444 of the record, where Thomas repeatedly testifies he agreed to do this. No, he didn't say I was obligated to do it. He said I agreed to it. It was a voluntary agreement. The fiduciary duty assertion is both new and quite frankly, they haven't cited it in case law at any level to support that, but I don't even know how that would get them there because unless they prove some concept that that was a strict liability regime, it would still not necessarily mean that OLPC was on the hook for that. And so that's not a basis for converting damages, what other litigation costs, into recoverable damages. And I would just make two other points, Your Honor, which is that I think my friend on the other side points to this oral agreement question and the insider question. None of those are disputed facts or relevant to the question. It's a basic principle of law. You cannot recover for third party harm and you cannot manufacture harm to yourself by voluntarily agreeing to do it. And I think just to sort of wrap up on this point, just think of how radical this could really be. Just to give it sort of an example, I think under their world, I as an attorney who might have a doctor who knows that I'm an attorney, in their view, if that doctor injures me, not only is that doctor now on the hook for my wages, but I could, after the injury, voluntarily contract with my clients and say that any litigation costs you have because I can't now do the work for you, that would all be recoverable. And that's all on the hook for the doctors. That is the outcome of their theory. And that is radical. Now, my friend also just meant to mention one part on causation. And I think that's just another reason why their damages claim fails. Remember that their theory on causation is all or nothing. That they are entitled to recompense for every single dollar spent in each of the three lawsuits that was filed. Now, that is a pretty sweeping theory for which they have no evidence. Now, their theory of causation is, well, the documents showed up, and then there were some lawsuits, so causation. But they have no competent evidence to prove that. The only types of competent evidence would be one testimony from, for example, Carolyn or the other plaintiffs in those lawsuits saying, yeah, no, without these documents, I couldn't have brought this lawsuit or I wouldn't have brought that lawsuit. That would create a reasonable inference. Or you need an expert. They have neither. And so even on that causal element, even if you don't buy any of the other arguments about the sort of radical nature of their theory, they simply can't prove that element. Conversion. We have two reasons why the district court got this right. The first is waiver, and the second is that they just brought the wrong claim. Now, I want to talk a little bit on waiver, because we pointed out in our brief below in our motion that the claim failed absent proof of damages. And I'll point, it's not just a footnote. I would point this court to the record, to volume one, pages 240 to 241, and also 225, note six, and point out that the claim failed. In both cases, instances, we argued very clearly that their conversion claim would fail absent damages. They were on notice. They did not respond. What they came back and said was, we have damages. And so they waived, and by all of their arguments about preservation, prove our waiver point. Because if they're right that their brief in their motion said, well, we knew the damages were in an element, then they also knew the damages were in an element for the purposes of our motion. And they waived the opportunity to bring that. So I don't think this court actually needs to get to the question of conversion. But if it does, I think they're just using the wrong legal claim here. I think there's just a fundamental misunderstanding about what work conversion can do. Conversion is fundamentally about use and possession. It's not about exclusive control. And I think their argument just fails at that step, because there's nothing in the case law. And in fact, I can point this court to the Kirkham case from Utah that's cited in our briefs and in paragraph 27. And that was a case that sort of differentiated between, well, what's tangible and what's intangible? But it gets to this conclusion at the end. And that's the bottom point here, which is that even if we're dealing with tangible documents, when the owner doesn't lose the use and the ability to use the documents, even if somebody else can use it, that's not conversion under Utah law. So you want us to hold that their conversion claim just is without merit, regardless of any arguments that they have made? We think that's exactly right, Your Honor. And we think you don't even need to get to the merits of waiver. But we think, just as a reason why they weren't prejudice, even if you're looking at this under a clear error standard, it certainly wasn't clear error because of the nature of Utah law. But we think it just fails on the merits, because this is what they have alleged, the wrong claim. Conversion doesn't protect you from the use of other folks if you can use the document itself. And the testimony from Thomas is clear that OOPC never lost the ability to use these documents. But I do just want to take it a step further, because I understand that there's this debate in this case about, well, was it tangible? Was it intangible? And it doesn't really matter. And here's why. What they've said is that we lost the ability to protect the confidentiality and the information inside those documents. That is quintessential intangible property. It's an idea. It's like a song. It's in your head. And Utah law is crystal clear that there is no conversion claim for intangible property. All of the cases they cite about that are from out of jurisdiction. They are not Utah cases. Now, let's say that they come back in their reply and say, no, no, no, it's also about the documents. Well, fine. We'll take them at their words. Even if it's about the documents, their claim loses. And this is all the cases we cite about how copies of documents do not amount to a conversion claim. And that gets back to my original point, which is that conversion is not about exclusive control. It's about the loss of use in the profession. They have not cited in any of their briefs or their papers below arguments as to why they lost use and possession of these documents. So I'm sorry, and I'll just let you continue. This is a short question, but do you concede that conversion, setting aside all the arguments about how their conversion argument fails that you've just given us, do you concede that conversion does require damages? Do you concede that the district court erred in finding that conversion requires damages? So I think what I would, I'm going to resist the question a little bit because I actually don't think that that's what the district court found. What I think the district court found was you did not respond to Mr. Olson's argument that conversion does require damages. And then if you look very closely at the cases that the district court cited at the end of its brief, it says the problem here is that I can't give you any remedy, right? That the case is I can't change your legal rights in this suit anymore because you're not entitled to an injunction and you're not entitled to damages. And so I don't think that the district court was necessarily endorsing of you that conversion requires damages. And of course, I will admit that you can prevail on a conversion claim for injunction. But the point is that they missed the ball when they just didn't answer that. And then we get to a point where they can't prove damages. They can't establish an injunction. And so what the district court is left with is I can't give you any remedy anymore. And I think that that gets to the point about nominal damages, which is that you don't get to go to trial either on nominal damages. Now, they've cited in their brief several cases that talk about, well, it's appropriate to give nominal damages in conversion cases. And those cases are almost consistently in cases after a trial where the party had an opportunity to present evidence and then failed, but was able to prove liability. But I think Utah case law and Tenth Circuit case law is in accordance with this, which is that you don't get a reversal and you don't get summary judgment when all you get, when the most you are entitled to is nominal damages. And that's this case. Counsel, can I ask you about the injunction again? Can you help me make sense of the district court's reasoning as to why it could not provide any injunctive relief? Sure, Your Honor. I think there's two ways. So I'll get to the district court's and then I'll give you an alternative ground alternative route to affirm on the injunction analysis. But for the district court, we had in our motion for summary judgment, big header, no irreparable harm. Like they were on notice then, you need to show your cards. What is your irreparable harm? And they didn't, what they said was, well, we have damages. And what the district court said is the establishment of damages, in fact, contradicts the idea that you have irreparable harm because it proves that you can be compensated through damages. And so what I think, certainly they did not come back when they were on notice, show your cards what your irreparable harm is. They left their cards on the table. They didn't come back with anything other than a half sentence assertion. So either their failure to respond on irreparable harm was enough to waive that argument. So waiver is one basis to affirm what the district court did. Or what they said was something contradictory that invited and essentially told the district court, what we have as harm is our damages. That is self-contradictory and cannot establish irreparable harm. So I think either way, they have, I certainly think you don't need to get to the issue on the correctness of the decision on that front because of the waiver issue. But independently, I think their answer on that, which is we have damages, which does not, which is just not irreparable harm. One other point on that, which is that if their conversion claim fails as a matter of law, for the reasons I just, they got the legal elements of conversion wrong, both because this is intangible, but also because they were not deprived of deprivation of use. There is also no basis for an injunction anyway, because on page 34 of their opening brief, the only claim for which they are maintaining any request for an injunction is the conversion claim. So if that claim fails, the claim for the injunction of relief also has to fail with it. One other sort of bottom line point here, Your Honors, is that I think they've made a point about how our client is a Harvard trained attorney, and there has to be some kind of compensation. And I just want to preempt some of those arguments, which is that this is not a place where policy needs to come in or the equities are in the wrong direction. This is a consequence of their own litigation choices. They brought the wrong claims from the beginning. There's a mismatch between their theory of liability. They then disclosed their damages. At the very tail end of the case, what would have been a potentially viable theory of damages for their CAFA claim, they didn't disclose until their opposition to our motion for summary judgment. So this is not a case in which some kind of wrong is wrongly going without a remedy. It's a consequence of their own litigation choices. And I would just also point out that this is not their only shot. There are two other cases pending in state court. We've the citations for the case numbers for those are in footnote three of our brief, where there's essentially a copy and paste job on the factual allegations and the issues. And so if they have the goods, either on the injunction or someplace else, then maybe they can prove it there. But in this case, they defaulted on their duty to bring a claim and present cognizable damages or an injunction. And the case was properly dismissed. Thank you. If you're 24 seconds. I'm claiming my 24 seconds, Your Honor. Simply to say this in response to your question, Judge Federico, where was the duty argument preserved? It was in the district court as Exhibit A, ironically, to the defendant's motion for summary judgment. And it's in your record at volume two. It's an expert opinion. It begins on page 408, continues to page 418, where it specifically cites rule 1.6e of the Utah Rules of Professional Responsibility, describing an attorney's fiduciary duty to keep client documents confidential. Thank you. I think, counsel, you are excused. The case is submitted.